Form 240A - Reaffirmation Agreement (1/07)

☒ Presumption of Undue Hardship
☐ No Presumption of Undue Hardship
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

FILED
10 JAN -4 AM 11:15
CLERK
U.S. BANKRUPTCY COURT - ERIE

DEC 30 AM:13

# UNITED STATES BANKRUPTCY COURT
### Western District of Pennsylvania

In re  Galina Veretnov ,                Case No. 09-11190
            Debtor                                       Chapter  7

## REAFFIRMATION AGREEMENT
*[Indicate all documents included in this filing by checking each applicable box.]*

☒ Part A: Disclosures, Instructions, and Notice to Debtor (pages 1 - 5)     ☒ Part D: Debtor's Statement in Support of Reaffirmation Agreement

☒ Part B: Reaffirmation Agreement     ☐ Part E: Motion for Court Approval

☒ Part C: Certification by Debtor's Attorney

*[**Note:** Complete Part E only if debtor was not represented by an attorney during the course of negotiating this agreement.]*

✓ **Name of Creditor:**  HSBC BANK NEVADA, N.A. - BEST BUY CO., INC.

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the Federal Reserve Act

**PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR**

1. **DISCLOSURE STATEMENT**

*Before Agreeing to Reaffirm a Debt, Review These Important Disclosures*:

**SUMMARY OF REAFFIRMATION AGREEMENT**
This Summary is made pursuant to the requirements of the Bankruptcy Code.

**AMOUNT REAFFIRMED**

The amount of debt you have agreed to reaffirm:        $  550.00

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

**Form 240A - Reaffirmation Agreement (Cont.)**  2
**ANNUAL PERCENTAGE RATE**

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

    a. If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement: __0__ %.

*--- And/Or ---*

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ___0___ %. If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$_____ @ _____ %;
$_____ @ _____ %;
$_____ @ _____ %.

    b. If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

    (i) The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: __0__ %.

*--- And/Or ---*

    (ii) The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: ___0___ %. If different simple interest rates apply to different balances included in the amount reaffirmed,

**Form 240A - Reaffirmation Agreement (Cont.)**  3

the amount of each balance and the rate applicable to it are:
$_____ @ _____%;
$_____ @ _____%;
$_____ @ _____%.


c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.


d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

<u>Item or Type of Item</u>                    <u>Original Purchase Price or Original Amount of Loan</u>
COMPUTER, MONITOR, PRINTER, 42" LCD             550.00


*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $_____ is due on _____(date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— *Or* —

Your payment schedule will be: ___11___ (number) payments in the amount of $___50.00___ each, payable (monthly, annually, weekly, etc.) on the ___20___ (day) of each ___month___ ( week, month, etc.), unless altered later by mutual agreement in writing.

— *Or* — Beg 03/20/10

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

**Form 240A - Reaffirmation Agreement (Cont.)**                                                              4

### 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully. Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, you must have completed and signed Part E.

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. <u>If the creditor is not a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D. <u>If the creditor is a Credit Union</u> and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

**Form 240A - Reaffirmation Agreement (Cont.)**                                          5

### YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

<u>What are your obligations if you reaffirm the debt?</u> A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

<u>Are you required to enter into a reaffirmation agreement by any law?</u> No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

<u>What if your creditor has a security interest or lien?</u> Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

> **NOTE:** When this disclosure refers to what a creditor "may" do, it does not use the word "may" to give the creditor specific permission. The word "may" is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**Form 240A - Reaffirmation Agreement (Cont.)**                                        6

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1. Brief description of credit agreement:

    Revolving credit, granting a purchase money security interest in items purchased on this account.

2. Description of any changes to the credit agreement made as part of this reaffirmation agreement:

    Interest rate reduced to (0) %.
    Payment provisions changed.

<u>SIGNATURES(S)</u>:

Debtor/Borrower:                                                    Accepted by creditor: [Must include Name and Address of Creditor]

GALINA Vladimirovna
(Print Name of Debtor)                                              Name of Creditor: <u>HSBC BANK NEVADA, N.A. - BEST BUY CO., INC.</u>
                                                                                        (Printed Name of Creditor)

*Halina Deretwa Bardwell*                                           Address of Creditor: <u>C/O Bass & Associates, P.C.</u>
(Signature)                                                                              <u>3936 E. Ft. Lowell Suite 200</u>
                                                                                         <u>Tucson, AZ 85712</u>
Date: 11/04/09

                                                                    (Signature of Creditor Representative)

                                                                    Jennifer Pursley
                                                                    (Printed Name and Title of Individual Signing for Creditor)

Joint Debtor/Co-borrower,
If also reaffirming these debts:

_____                                        Date of creditor acceptance:
(Print Name of Joint Debtor)
                                                                    12/28/09
_____
(Signature)

Date: _____

**Form 240A - Reaffirmation Agreement (Cont.)**                                                               7

PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☒ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: THEODORE B. Ely

Signature of Debtor's Attorney: _____

Date: 11/04/09

**Form 240A - Reaffirmation Agreement (Cont.)**     8
**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

Must be completed

1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $3,535.62 and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $3,152.6 leaving $ 0 to make the required payments on this reaffirmed debt.

I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: Debtor has been making payments. Creditor dropped late charges & fees.

(Use an additional page if needed for a full explanation.)

2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: X Jatima Veretnov
(Debtor)

_____
(Joint Debtor, if any)
Date: X 11/04/09

— Or —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
(Debtor)

_____
(Joint Debtor, if any)
Date: _____

# Best Buy Credit Card Application

**Get what you want. Today.**

**1. APPLICANT:** Incomplete form may result in decline of your application.    For WI Residents Only: Check box if you are married: ☐

"BLUE OR BLACK INK ONLY"

Home Phone    First Name    Middle Initial    Last Name    Initial Sale Amount
( )

Current Address    Apt. #    City    State    Zip    ☐ Own ☐ Rent ☐ Other

Date of Birth (MM/DD/YY)    Social Security Number    Business Phone
/ /    - -    ( )

E-Mail Address (optional)    Annual Income*    Check if you have a: ☐ Checking Account ☐ Savings Account

By providing your e-mail address, you also consent to receive e-mails relating to offers and services from Best Buy Co., Inc. and its subsidiaries.

## 2. JOINT APPLICANT (or spouse of applicant if married WI resident - complete name and address only)

Home Phone    First Name    Middle Initial    Last Name
( )

Current Address    Apt. #    City    State    Zip

Date of Birth (MM/DD/YY)    Social Security Number    Business Phone    Annual Income*
/ /    - -    ( )

*INCOME NOTICE: Can include all sources. You need not disclose alimony, child support or separate maintenance income if you do not wish to have it considered as a basis for repaying this obligation.

## 3. APPLICANT AND JOINT APPLICANT: SIGN HERE

All of the information furnished on this application is, to the best of your knowledge, complete and accurate. You agree that you are furnishing all such information on this application to both Best Buy, and to HSBC Bank Nevada, N.A. ("we", "us"), the issuer of the Best Buy credit card. You agree that we may obtain a credit bureau report on you and we may check any of the information provided on this application from whatever source we choose. By completing and signing this application, you are applying for a credit limit in the highest amount we deem appropriate, regardless of any initial sale amount, and you are requesting a Card issued to you by us which will allow you to make purchases under this Account. By signing, using or permitting others to use this Card; b) signing or permitting others to sign sales slips; c) making or permitting others to make purchases by telephone, Internet, or any other means, you agree to the terms and conditions of the Cardholder Agreement and Disclosure Statement, (which includes an arbitration provision) which shall be sent to you with the credit card. If approved for Program B, based on your creditworthiness, we determine you do not qualify for Program A, you agree we may consider you for an account with the terms and conditions of Program B. If this is a joint credit application, you understand that each applicant has the right to use the Account and that you shall be liable for all purchases made under the Account by any joint applicant. You grant us a purchase money security interest in the goods purchased on your Account. You understand that we may prohibit the information relating to our transactions and experiences with you, to others, including Best Buy, whether or not you are approved for credit. You may prohibit the sharing of such information by calling us at 1-800-365-3804. The Spanish translation has been provided for your convenience. In case of conflict, the English version is the binding contract and will govern. You acknowledge receipt of the English/Spanish application and Important Terms. Some future correspondence may only be available/provided in English.

Applicant's Signature    Date (MM/DD/YY)    Joint Applicant's Signature    Date (MM/DD/YY)

↱ X    / /    ↱ X    / /

This section must be completed if applicant is approved for Program B.

## 4. ACKNOWLEDGEMENT OF DISCLOSURE:

YOU ACKNOWLEDGE YOU HAVE RECEIVED AND READ THE
PROGRAM B DISCLOSURE.    X _____    DATE _____
APPLICANT'S SIGNATURE    (MM/DD/YY)

*(For Best Buy Use Only)*    MERCHANT #88 _____    ORG #169    CREDIT LIMIT _____    CIRCLE ONE: APPROVED / DECLINED
MERCHANT #2 _____

APPLICATION # _____

I.D. Verified by (Employee I.D.): _____

I.D. #1 Photo ID (Applicant)    Type: _____    I.D. # _____

## Account Shield℠

**PROTECT YOUR ACCOUNT WITH ACCOUNT SHIELD℠, AN OPTIONAL MONTHLY DEBT CANCELLATION PROGRAM.**

If you enroll in our optional Account Shield program, your monthly credit card balance or a portion of your balance may be cancelled in the case of a qualifying Total Disability, Involuntary Unemployment, Property Damage or Loss, or Loss of Life event. For Total Disability, the maximum monthly balance that may be cancelled is $1,000 per month, up to $10,000, and for Involuntary Unemployment, up to $1,000 per month for six months. For Loss of Life or Property Damage or Loss, the maximum balance that can be cancelled is $10,000. To receive a cancellation benefit (for other than Loss of Life or Property Damage or Loss) on your account, you must be employed full-time (but not self-employed, working for a spouse or any other individual living with you on whom you are financially dependent for support and maintenance, or employed on a part-time basis) and working 30 hours or more per week at a single job on the date the event occurs. Account Shield is not insurance and is unavailable in Mississippi, Guam, the Virgin Islands, Puerto Rico and Canada.

**YES,** please enroll me, the primary cardholder, in the optional Account Shield monthly debt cancellation program. I authorize the monthly charge to my account when I have a balance. I have received and read the Account Shield Summary. I understand that your evaluation of my credit card application will not be influenced by whether I choose to enroll, and I am free to cancel at any time.

**YES, PLEASE ENROLL ME AT THIS TIME!**

↱ _____    ____/____/____
SIGN HERE TO ENROLL    DATE (MM/DD/YY)

**NO,** I DO NOT WISH TO ENROLL AT THIS TIME.

↱ _____    ____/____/____
SIGN HERE TO DECLINE    DATE (MM/DD/YY)

DC11-11    Ed 07/01/05

(f) **For Program A:** The Daily Periodic Rate which is used to determine your Finance Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one-three hundred sixty fifth of the sum of the highest of the Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of 14.4 percentage points for the Standard Rate and a "Spread" of 18.4 percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month. The minimum rate of **Finance Charge** for the Standard Rate is a Daily Periodic Rate of .05425% (corresponding **19.8% Annual Percentage Rate**). The minimum rate of **Finance Charge** for the Default Rate is a Daily Periodic Rate of .06521% (corresponding **23.8% Annual Percentage Rate**). For example, as of the billing cycle beginning January 1, 2007, the Finance Charge for the Standard Rate would have been a Daily Periodic Rate of .06205% (corresponding **22.65% Annual Percentage Rate**) and the Finance Charge for the Default Rate would have been a Daily Periodic Rate of .07301% (corresponding **26.65% Annual Percentage Rate**). An increase in the Prime Rate will increase your applicable Daily Periodic Rate which may increase the Finance Charge and the Minimum Monthly Payment due on your Account. You will qualify for the Standard Rate until you have failed to make two consecutive Total Minimum Payments Due and are 30 days past due.

**For Program B:** The Daily Periodic Rate which is used to determine your Finance Charges and the corresponding Annual Percentage Rate, will be variable rates which may change monthly. The Daily Periodic Rate will be one-three hundred sixty fifth of the sum of the highest of the Prime Rate(s) published in *The Wall Street Journal* "Money Rates Section" on the first or last day of the month that *The Wall Street Journal* is published, plus a "Spread" of 17.4 percentage points for the Standard Rate and a "Spread" of 21.4 percentage points for the Default Rate. Any changes in the Prime Rate will take effect on the first day of your billing cycle beginning in the next month. The minimum rate of **Finance Charge** for the Standard Rate is a Daily Periodic Rate of .06342% (corresponding **23.15% Annual Percentage Rate**). The minimum rate of **Finance Charge** for the Default Rate is a Daily Periodic Rate of .07438% (corresponding **27.15% Annual Percentage Rate**). For example, as of the billing cycle beginning January 1, 2007, the Finance Charge for the Standard Rate would have been a Daily Periodic Rate of .07027% (corresponding **25.65% Annual Percentage Rate**) and the Finance Charge for the Default Rate would have been a Daily Periodic Rate of .08123% (corresponding **29.65% Annual Percentage Rate**). An increase in the Prime Rate will increase your applicable Daily Periodic Rate which may increase the Finance Charge and the Minimum Monthly Payment due on your Account. You will qualify for the Standard Rate until you fail to make your Total Minimum Payment Due by your next statement date two or more times in 12 consecutive months.

**3. MINIMUM FINANCE CHARGE:** A minimum Finance Charge of $2.00 will be assessed for each billing cycle in which a Finance Charge is payable.

**4. FEES:** We may impose on your Account the following fees, which will be added to your Account when assessed:

a) **Late Payment Fee: Program A:** Your Late Payment Fee will be based on your combined account balance (less any Delayed Monthly Payment credit plan balances) at the time of your payment due date. If you fail to pay us the Total Minimum Payment Due in full by the Payment Due Date on your billing statement, you agree to pay a Late Payment Fee of $10 for combined account balance of $100 and below; $29 for combined account balance of $100.01 to $1,000; and $35 for combined account balance of $1,000.01 and over. **Program B:** Your Late Payment Fee will be based on your combined account balance (less any Delayed Monthly Payment credit plan balances) at the time of your payment due date. If you fail to pay us the Total Minimum Payment Due in full by the Payment Due Date on your billing statement, you agree to pay a Late Payment Fee of $35 for combined account balance of $250 and below; and $39 for combined account balance of $250.01 and over.

b) **Returned Check Fee: Program A:** You agree to pay $25 each time any payment check on your Account is returned unpaid by your bank or other financial institution for any reason. **Program B:** You agree to pay $39 each time any payment check on your Account is returned unpaid by your bank or other financial institution for any reason.

c) **Document and Research Fees:** If you ask us to provide you with a replica of your sales slip, billing statement or other document (except in connection with a billing error claimed in accordance with "Your Billing Rights"), we may charge you the following fees: (i) Billing statement: $5 per statement (ii) Sales/credit slip:$5 per transaction; (iii) Payment instrument:$5 per payment; and, (iv) Research fee: $15 per hour. Payment Histories: You will be charged the applicable research fee in addition to the following itemization fees. For requests involving statement activity within the last 12 months - $7.50; activity within the last 13-48 months - $11.25; and activity within the last 49-72 months - $22.50. We reserve the right to change the Document and Research Fee Schedule from time to time. You may call Customer Service for a current fee schedule.

d) **Reissued Card Fee:** You may be charged $5 each time you request that your credit card be reissued.

e) **Direct Check Fee:** In the event that you pay your account with a direct check, you agree to pay up to a $15 fee for each direct check. We reserve the right to change the Direct Check Fee from time to time. You may call Customer Service for a current fee schedule.

f) **Overlimit Fee:** In the event you exceed your credit limit, you will be charged an Overlimit Fee of $0.

g) **Collection Costs:** If, after you default, we refer your Account to an attorney and/or collection agency for collection, we may charge you our collection costs, including court costs and reasonable attorneys' fees, when and as permitted by applicable law.

**5. SECURITY:** Except as indicated below, you grant us a purchase money security interest in the goods purchased with your Card. Each good purchased on your Account will secure the entire Account balance until such good is paid in full. For purposes of determining which goods are subject to a security interest, payments received will be deemed to be applied first to any unpaid insurance premiums or debt cancellation fees (if applicable), Finance Charges, and fees and then to pay for purchases on the Account in the order in which they were made. When sufficient payments are made to repay the portion of the Account balance attributable to the purchase of a particular good, we will release our purchase money security interest in that good. Goods covered by a security interest may be taken from you if you do not pay on time. We may require you to make them available at a convenient place of our choice. We waive any security interest in your home if the goods are installed and in any goods purchased with credit card checks. We take no security interest in goods where the original purchase price is less than $200 if you live in New York and in goods where the original purchase price is less than $700 if you live in Maryland. If we repossess any goods purchased with your Card, we may charge you our repossession costs including, but not limited to, necessary repairs, storage fees and costs of sale, when and as permitted by law.

**6. ARBITRATION:** Any claim, dispute, or controversy between you and us (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present or future), including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, and except as provided below, the validity, enforceability, or scope of this arbitration provision, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed. The party initiating the arbitration proceeding shall have the right to select one of the following arbitration administrators (the "Administrator"): the American Arbitration Association ("AAA") or the National Arbitration Forum ("NAF"). The arbitrator shall be a lawyer with

```
                    BEST BUY
                     0000597
                   ERIE, PA 16509
           Store Phone Number 814 860 8487

                      SALE
```

| Order: | Date: 10/06/07 02:15 PM | Term ID: 041 | Cashier#: 699846 |
|---|---|---|---|
| Product Code | Description | Quantity | Amount |
| 8258048 | 42" LG 1080P LCD HDTV | 1 | 1367.99 |

|  |  |
|---|---|
| Subtotal | 1367.99 |
| Tax | 82.08 |
| Total | 1450.07 |

Acct#: XXXXXXXXXXXX4053
Payment Type: BBC CARD
Amount: 1400.00
Card Type: PL2
Tran#: 59708410
Auth#: 059392
Auth-CD: ELEC
Manual Tran Ind:
Signature:

*[signature]*

Acct#: XXXXXXXXXXXX8661
Payment Type: Credit Card
Amount: 50.07

```
              KEEP YOUR RECEIPT!
        I HAVE READ AND AGREE TO ALL
          RETURN AND REFUND POLICIES
           PRINTED ON THE BACK OF THIS
           RECEIPT AND POSTED IN THE
         STORE. I HAVE RECEIVED GOODS
        AND/OR SERVICES IN THE AMOUNT
                SHOWN ABOVE.
       BESTBUY.COM RETURN AND EXCHANGE
       INFORMATION AND PRICE MATCH POLICY
       MAY VARY SLIGHTLY FROM IN-STORE POLICY.
         PLEASE LOG ONTO WWW.BESTBUY.COM
                FOR COMPLETE DETAILS
            >>>>>>> ELECTRONIC COPY <<<<<<<
```

*4053*

LAW OFFICES

## BASS & ASSOCIATES

A PROFESSIONAL CORPORATION

WWW.BASS-ASSOCIATES.COM

FT LOWELL CORPORATE CENTER
SUITE 200
3936 E FT LOWELL RD
TUCSON, AZ 85712

December 28, 2009

Dear Clerk of the Court:

    Enclosed please find a Chapter 7 Reaffirmation Agreement; I respectfully request that it be filed in your court and that a stamped filed copy is returned to our office in the enclosed blue envelope.

Thank you,

Sincerely

Bethany Maldonado
Administrative Assistant